FILED
U.S. DISTRICT COURT
2010 OCT 26 AM 10:51
CLERK
SO. DIST. OF GA

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | | |
|---|---|---|
| LESLIE TED DOOLEY, | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION NO.: CV209-159 |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge G. William Davenport ("the ALJ" or "ALJ Davenport") denying his claim for Period of Disability and Disability Insurance Benefits. Plaintiff urges the Court to reverse the ALJ's decision and enter an award of benefits in Plaintiff's favor, or, in the alternative, to remand this case for a proper determination of the evidence. Defendant asserts the Commissioner's decision should be affirmed.

Plaintiff protectively filed an application for a Period of Disability and Disability Insurance Benefits on November 15, 2003, alleging that he became disabled on July 17, 2003, due to acid reflux, a back injury, blood pressure, depression, head trauma which causes vertigo, transichemic attacks ("TIA")/stroke, and a seizure.[1] (Tr. at 16; Def.'s Br., p. 2). After his claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. On January 11, 2006, ALJ Davenport conducted a

---

[1] Plaintiff filed another application on July 5, 2006, alleging the onset of disability on May 18, 2006. ALJ Davenport combined Plaintiff's records from these two applications in his decision, as the applications covered the same period of time. (Tr. at 13).

AO 72A
(Rev. 8/82)

hearing at which Plaintiff, who was represented by counsel, appeared and testified. Paul Dolan, a vocational expert, also appeared and testified at this hearing. ALJ Davenport found that Plaintiff was not disabled within the meaning of the Act. (Tr. at 13). The Appeals Council remanded Plaintiff's claim and directed the ALJ to "update the record and give further consideration to" Plaintiff's mental impairment and resulting residual functional capacity and to obtain a vocational expert, if necessary. ALJ Davenport conducted a supplemental hearing on May 14, 2008, at which Plaintiff appeared and testified and was represented by counsel. Jackson McKay, a vocational expert, also appeared and testified. The ALJ again found Plaintiff not to be disabled within the meaning of the Act. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, after considering additional evidence, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Tr. at 5).

Plaintiff, born on September 3, 1960, was forty-seven (47) years old when ALJ Davenport issued his final decision. He has two years' college education. (Tr. at 40). Plaintiff's past relevant work experience includes employment as an insurance agent, real estate appraiser, a furniture salesperson, and a golf range attendant. (Tr. at 31).

## ALJ'S FINDINGS

Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520 and 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987). The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a

2

medically severe impairment or combination of impairments. Yuckert, 482 U.S. at 140-41. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141. If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work. Id. If the claimant is unable to perform his past relevant work, the final step of the evaluation process determines whether he is able to make adjustments to other work in the national economy, considering his age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142.

In the instant case, the ALJ followed this sequential process to determine that Plaintiff had not engaged in substantial gainful activity since July 17, 2003. (Tr. at 16). At Step Two, the ALJ determined that Plaintiff had status post-surgeries for a fractured thoracic spine and left wrist, right wrist impairment, degenerative joint disease, vertigo, circulation problems secondary to a patent foramen ovale, depression, TIA, and coronary artery disease[2], conditions considered "severe" under the Regulations.

---

[2] The ALJ noted that Plaintiff had TIA and coronary artery disease beginning September 6, 2006, through December 31, 2006, and his other conditions for the entire relevant period. (Tr. at 16).

However, the ALJ determined that Plaintiff's medically determinable impairments did not meet or medically equal a listed impairment. (Tr. at 23). The ALJ found that Plaintiff, from July 17, 2003, through September 5, 2006, had the residual functional capacity to perform a limited range of medium work with the following limitations: standing/walking, each daily no more than 2 hours continuously for a total of 2 to 4 hours; sitting 4 hours at a time up to 6 hours per day; occasional crouching, stooping, or crawling; and no climbing of ladders/ropes/scaffolds or working around hazards. From September 6 through December 31, 2006, ALJ Davenport found that Plaintiff had the residual functional capacity for medium work with the following limitations: standing/walking[3] no more than 2 to 4 hours, each daily but no more than 2 hours at a time; sitting to an unlimited degree up to 6 hours per day, but not more than 4 hours continuously without taking a break; occasional climbing of ramps/stairs, but never ladders, ropes, and scaffolds; crawling and kneeling frequently, but never balancing; crouching/stopping occasionally; using arms for pushing/pulling occasionally and fine manipulation frequently; handling with the non-dominant left hand occasionally; driving and working on vibrating machinery and working on or near moving mechanical parts occasionally; and no exposure to dust, gases, and extreme temperatures due to breathing-related problems. (Tr. at 24-25). ALJ Davenport found that Plaintiff's mental capacity left him best suited for simple, low stress work of a generally repetitive nature which does not require prolonged interpersonal interactions. ALJ Davenport also found that Plaintiff had a good ability to understand, remember, and carry out simple job instructions and follow work rules; fair ability to: relate to co-workers, use judgment, interact with

---

[3] The undersigned presumes the ALJ intended the "walking/standing" limitation, as the specific limitation is omitted from his decision.

4

supervisors, function independently, maintain attention and concentration, behave in an emotionally stable manner, relate predictably in social situations, demonstrate reliability, and understand, remember, and carry out detailed job instructions; and poor ability to deal with the public and deal with work stresses. (Tr. at 25). The ALJ specifically noted that Plaintiff should not work in jobs allowing him unrestricted access to alcoholic beverages. At the next step, ALJ Davenport noted Plaintiff was unable to perform any of his past relevant work. (Tr. at 31). ALJ Davenport found that, considering Plaintiff's age, education, work experience, and residual functional capacity from July 17, 2003 through September 5, 2006, Plaintiff could make a successful adjustment to other work and could perform the following jobs which existed in significant numbers in the national economy: custodian, a medium, unskilled job; cloth folder, a light, unskilled job; and mail clerk, a light, unskilled job. Considering Plaintiff's age, education, work experience, and residual functional capacity from September 6 through December 31, 2006, Plaintiff could perform the following jobs: lens inserter, a sedentary, unskilled job; document preparer, a sedentary, unskilled job; and photo finisher, a light, unskilled job. (Tr. at 32-33).

## ISSUES PRESENTED

I. Whether the ALJ gave Plaintiff's treating physician's opinion the proper weight;

II. The ALJ erred in finding Plaintiff not credible; and

III. Whether the ALJ erred in finding Plaintiff's residual functional capacity as being at the medium exertional level.

AO 72A
(Rev. 8/82)

## STANDARD OF REVIEW

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Walden v. Schweiker, 672 F.2d 835, 838-39 (11th Cir. 1982). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

## DISCUSSION AND CITATION TO AUTHORITY

### I.  Treating Physician's Opinion

Plaintiff contends that the findings and opinions of Dr. Gary Decker, his treating physician, are well-supported and are not inconsistent with other evidence in the record.

AO 72A
(Rev. 8/82)

Plaintiff asserts that, as a result, Dr. Decker's opinions should have been accorded controlling weight.

Defendant asserts that ALJ Davenport considered the findings and opinions of Plaintiff's treating sources, including Dr. Decker, and found the opinions of these doctors regarding Plaintiff's functional abilities and employability to be unsupported by the reported objective findings. Defendant also alleges that Plaintiff's treating doctors' opinions were inconsistent with the clinical findings and reports of record and were contradicted by the assessments and opinions of Drs. Dunn, Sullivan, Friedrich, Acker, and Wallace, as well as by assessments of the non-examining medical consultants.

The "opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician." Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985). However, "[a]lthough the opinion of a claimant's examining physician is accorded substantial weight, it is not necessarily dispositive on the issue of disability." Johns v. Bowen, 821 F.2d 551, 555 (11th Cir. 1987). The opinions from treating sources "must be given substantial or considerable weight unless good cause is shown to the contrary." Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). "Good cause" exists when: (1) the treating physician's opinion is not supported by the record; (2) the record supports a finding inconsistent with the treating physician's opinion; or (3) the treating physician's opinion is conclusory or inconsistent with his own medical records. Id. at 1241.

AO 72A
(Rev. 8/82)

ALJ Davenport stated that Dr. Decker's findings[4] fail to justify the assessment that Plaintiff is more limited than he appeared and totally disabled, and his findings are "equally contradictory to the body of evidence as a whole." (Tr. at 29). ALJ Davenport also stated that it is "apparent" that Dr. Decker was not aware of Plaintiff's "reported improvement" and his playing golf. (Id.). The ALJ noted that Dr. Decker's opinions of Plaintiff's disability "primarily reflect [Plaintiff's] subjective allegations and complaints, as opposed to objective and clinical findings." (Id.). The ALJ observed that the evidence reveals some limitations attributable to Plaintiff's impairments, but Plaintiff was not precluded from all activities. The ALJ noted that Dr. Decker opined that Plaintiff is disabled due to vertigo and that he is "totally and permanently disabled" because of his medical conditions. (Tr. at 29). However, the ALJ also noted that, with the limitations Dr. Decker assigned to Plaintiff, it would make one wonder how Plaintiff managed to play golf—which requires lifting, bending, stooping, twisting and turning the head, neck, torso, and upper and lower extremities, pushing and pulling, gripping with both hand, and prolonged walking and/or standing or riding in a cart on uneven terrain.

ALJ Davenport had "good cause" to discount Dr. Decker's opinions and findings. The ALJ noted that Dr. Decker's findings were not justified by his own records and were contradictory to the evidence as a whole, particularly the findings of Doctors Eric Friedrich, Michael Dunn, Michael Sullivan, and Stanley Wallace. Thus, ALJ Davenport did not err in discounting Dr. Decker's findings.

---

[4] The undersigned need not recount the findings of Dr. Decker or any other medical care provider as to this enumeration of error. ALJ Davenport's findings are quite extensive and appear to be inclusive of all evidence to which Plaintiff objects.

8

## II. Credibility Findings

Plaintiff avers that the ALJ's conclusion that he was able to play golf does not consider that Plaintiff was ever able to play golf without pain or restriction. Plaintiff asserts that, while he has played or attempted to play golf, he had pain in his wrists and limitation of motion. Plaintiff also asserts that he had a seizure while he was on the golf course. Plaintiff asserts that the evidence shows that he cannot successfully maintain an activity "without interference from his limiting and disabling conditions." (Doc. No. 12, p. 15).

Defendant contends that the ALJ found Plaintiff's subjective allegations of his limitations credible to the extent they were consistent with an inability to perform more than a wide range of physical activity at the sedentary to medium exertional levels in light of the evidence of record. Defendant also contends that the ALJ considered the intensity, persistence, and frequency of Plaintiff's symptoms, the findings and observations of treating and consulting medical specialists, and Plaintiff's reported daily activities in weighing Plaintiff's credibility. Defendant further contends that ALJ Davenport's findings are supported by substantial evidence and are consistent with applicable case law.

If a plaintiff "testifies as to his subjective complaints of disabling pain and other symptoms, . . . the ALJ must clearly 'articulate explicit and adequate reasons' for discrediting the claimant's allegations of completely disabling symptoms." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir.1995)). "Although this circuit does not require an explicit finding as to credibility, the implication must be obvious to the reviewing court." Id. (internal citation

9

omitted). An ALJ's credibility determination need not "cite 'particular phrases or formulations'[,] but it cannot merely be a broad rejection which is 'not enough to enable [a reviewing court] to conclude that [the ALJ] considered [a plaintiff's] medical condition as a whole.'" Id. at 1210-11 (quoting Foote, 67 F.3d at 1561).

In determining Plaintiff's credibility, it is apparent that ALJ Davenport considered the entirety of Plaintiff's medical condition. ALJ Davenport stated that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his alleged symptoms were not credible, as they were not substantiated by objective medical evidence and were inconsistent with Plaintiff's subjective reports to treating and examining sources. Specifically, ALJ Davenport noted that Plaintiff alleged that he is disabled due to dizziness, neck pain, back pain, bilateral wrist pain, and depression, yet he was able to play golf, which negated the purported severity of his problems and pain. The ALJ also noted that Plaintiff reported to Dr. Dunn's staff that he had discomfort when he played golf. The ALJ further noted that Plaintiff told Dr. Noel Chua that he tried to play golf, but he could not because his wrists hurt. ALJ Davenport stated that, about a month and a half later, Dr. Dunn stated that Plaintiff's injured wrist was on his non-dominant arm and "reiterated that [Plaintiff] was able to play golf." (Tr. at 26). ALJ Davenport observed that, despite Plaintiff's claim that he played golf only because he was told to do so (which ALJ Davenport presumed to be by treating sources) and was unable to do so because of his wrist and constant vertigo, Plaintiff testified that he was playing golf in February 2008 when he suffered a seizure on the ninth hole. ALJ Davenport stated that this was well after Plaintiff claimed he could no longer play golf.

AO 72A
(Rev. 8/82)

ALJ Davenport also stated that, despite Plaintiff's assertion that he could not work because of his limitations, Dr. Dunn did not agree with this opinion. The ALJ noted that, when Plaintiff saw Dr. Sullivan, he reported he had the same pain he had prior to surgery, which was contrary to several reports Plaintiff made to Dr. Dunn and his staff. The ALJ also noted that Plaintiff seemed to complain about Dr. Dunn's paperwork (specifically, the references to Plaintiff's golf playing), not Dr. Dunn's medical care or treatment. ALJ Davenport stated that Plaintiff testified during the January 2006 hearing that he had to lie down three (3) times a day for 30 minutes at a time and that he reported this to his doctors, yet his doctors all neglected to write this in Plaintiff's records. ALJ Davenport observed that the purported omission of his doctors "would be tantamount to repeated mass medical malpractice for all his physicians to neglect mentioning such a clearly important symptom of this magnitude." (Tr. at 28). As to Plaintiff's history of seizures, the ALJ noted that Plaintiff only had one (1) reported seizure, and the evidence of record showed that Plaintiff denied any residual effects from this seizure after 3 to 4 minutes; however, Plaintiff reported to a consultative examiner that he had a history of right-sided loss of strength and paresthesia secondary to the stroke (TIA). ALJ Davenport stated that, notwithstanding Plaintiff's testimony during the May 2008 hearing that he could not drive after having the seizure, he was able to drive during the day through his date last insured and after that date, as well. Additionally, Plaintiff testified that he mows the grass at his house with a riding lawn mower. Further, ALJ Davenport stated that Plaintiff said he does not do much housework because he did not want to "irritate" his back, yet he was playing golf in February 2008. (Tr. at 28). The ALJ observed that Plaintiff claimed he does not like to

AO 72A
(Rev. 8/82)

be around crowds or people in general, including his wife, yet Plaintiff reportedly got along well with his wife and saw or talked to his parents daily; the ALJ found this suggested Plaintiff had no problem maintaining social functioning during the relevant period. ALJ Davenport found Plaintiff's isolation to be "unimpressive" because Plaintiff went outside to be isolated from others, which included frequent visits with his parents. (Id.). ALJ Davenport also found that there was no indication that Plaintiff had problems with focus, attention, or the ability to concentrate, as he spent most of his day watching television, reading (particularly adventure novels), and learning new things on the computer. ALJ Davenport noted that, even though Plaintiff claimed not to exercise, he played golf and took his dog for a swim.

It is evident ALJ Davenport gave explicit and adequate reasons for discrediting Plaintiff's subjective allegations of disabling symptoms. Plaintiff's assertion to the contrary is without merit.

### III. Plaintiff's Residual Functional Capacity

Plaintiff contends that the residual functional capacity ALJ Davenport found him to have is of a heavier exertion than Plaintiff's past relevant work, which the ALJ found Plaintiff incapable of performing. Plaintiff avers that the consultative examination report shows that he feels overwhelmed, is incapable of dealing with life stresses, and is poorly motivated to attempt any significant change. Plaintiff asserts that this report also reveals that, although Plaintiff is able to understand simple instructions, his ability to carry out those instructions is limited by his depression and reports of chronic pain. Plaintiff also asserts that this report reveals that getting along with others in the workplace and completing work in a timely manner are "unlikely." (Doc. No. 12, p. 18).

Defendant alleges that the ALJ did not ignore the evidence of record relating to Plaintiff's depression. Defendant asserts that it is clear ALJ Davenport considered evidence of Plaintiff's physical and mental impairments and that the non-exertional impact of Plaintiff's psychological state and pain were appropriately included. Defendant also asserts that Plaintiff had the burden of establishing that his impairments preclude the performance of any substantial gainful activity, which Plaintiff did not do.

ALJ Davenport stated that Plaintiff did not specifically allege he was disabled due to psychological impairment initially. The ALJ noted that the limitations found on the Activities of Daily Living form were related to Plaintiff's alleged physical problems, not any alleged mental health problems. The ALJ also noted that Plaintiff stated he socialized except when he was financially unable to do so and had no problems with memory, concentration, task completion, or following written or oral instructions. The ALJ also stated that Plaintiff continued taking Prozac for his depression and that Wellbutrin was added, which Plaintiff was able to take without side effects and appeared to be "doing well" with this treatment regimen. (Tr. at 21). ALJ Davenport observed that Plaintiff, despite a long-standing history of depression, managed to have a productive work history and remain active. Plaintiff reported that he was able to handle his personal needs independently, go eat with his family, do light shopping, and visit his parents daily. ALJ Davenport noted that Plaintiff did not require breaks or rest periods when he was working and was able to get along with his supervisor and co-workers. ALJ Davenport also noted that Plaintiff got married in February 2005. According to a disability report completed in April 2007, Plaintiff was seeing Dr. Carlos Torrellas, a psychiatrist, and was being weaned off Prozac and changed to Effexor XP for

AO 72A
(Rev. 8/82)

depression; there were no side effects noted from these medications. ALJ Davenport observed that any noted changes in Plaintiff's conditions or any new limitations were associated with Plaintiff's physical conditions only. ALJ Davenport also observed that a "prevailing complaint throughout psychiatric treatment notes is [Plaintiff's] problem handling the potential of his parents' death although they were in good health." (Tr. at 22).

ALJ Davenport stated that Plaintiff's psychological consultative evaluation with Dr. David Acker in August 2007 was a "fairly benign exam overall[.]" (Tr. at 23). However, ALJ Davenport noted that, though Dr. Acker "echoed the prior mental residual functional capacity assessment", it was noted that Dr. Acker was not told and was not aware that Plaintiff was drinking three (3) 12-packs of beer a week, which the ALJ "obviously" had to factor into Plaintiff's case. (Id.).

The ALJ then turned to Plaintiff's testimony during the hearings, at which he testified that he is on medications but was unsure of what medications he was taking. ALJ Davenport noted that Plaintiff was not aware of any side effects from his medications, which mostly was consistent with his denials of adverse side effects to treating sources (other than drowsiness), but was inconsistent with detailed side effects Plaintiff and his representative documented in his disability update forms. ALJ Davenport observed that, contrary to Plaintiff's alleged poor short-term memory, he admitted to the ALJ where he and his wife parked the car and what the security guard was wearing and that he had a gun. The ALJ also observed that Plaintiff's reported amounts of drinking were inconsistent from month-to-month and doctor to doctor, and the ALJ specifically noted that Plaintiff told Dr. Acker during the examination that he

14

drinks socially, but not abusively; the ALJ found this "curious", as Plaintiff had stated he did not want to be around other people. The ALJ also noted that Plaintiff had been advised that his alcohol consumption affected his mood.

ALJ Davenport specifically noted that Plaintiff's counsel misrepresented Dr. Acker's opinion contained in his consultative psychological report, as that report "explicitly" states that Plaintiff can understand simple instructions. (Tr. at 33). ALJ Davenport also noted that Dr. Acker explained that, while Plaintiff's ability to understand, remember, and carry out simple instructions is limited by a mental impairment, Plaintiff's ability to adjust and perform in this area is "good", which means his ability to function is "limited but more than satisfactory." (Id.). The ALJ stated that Dr. Acker suggested Plaintiff had some degree of limitation in his ability to get along with others in the workplace and in completing his work in a timely manner; however, Dr. Acker's explanation revealed that Plaintiff's ability to function in these areas was limited but satisfactory. ALJ Davenport concluded that Plaintiff had a satisfactory to more than satisfactory ability to meet the demands of simple work. In reaching this conclusion, ALJ Davenport also considered: Dr. Wallace's opinion that Plaintiff's vertigo was incorporated into the hypotheticals presented to the vocational expert; Plaintiff's activities of daily living (recounted above); Plaintiff's self-employment in 2004; and Dr. Friedman's assessed limitations precluding only night driving and driving without distractions.

The ALJ's finding that Plaintiff had the residual functional capacity to perform work at the medium exertional level, with limitations, is supported by substantial evidence. Plaintiff's contentions to the contrary are without merit. In addition, the only

medium exertional level job existing in significant numbers in the national economy ALJ Davenport found Plaintiff could perform was that of a custodian. However, the ALJ found Plaintiff was able to perform several other jobs at the light and sedentary exertional levels.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that the decision of the Commissioner be **AFFIRMED**.

**SO REPORTED** and **RECOMMENDED**, this 26th day of October, 2010.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

16